UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN PAUL FAULKNER,

    Plaintiff,

v.                                                    Case No.  8:20-cv-2264-T-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**     **Procedural Background**

Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 92, 237-50). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr.63-128, 158-79). Plaintiff then requested an administrative hearing (Tr. 178-79). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 43-60). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 26-35). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 2-8). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1968 (Tr. 34), claimed disability beginning October 15, 2014 (Tr. 26). Plaintiff has a high school education (Tr. 44) and past relevant work changing engine oil and oil filters at Valvoline Instant Oil Change (Tr. 46). Plaintiff alleged disability due to human immunodeficiency virus ("HIV"), spinal impairments, and hepatitis C (Tr. 92, 237-50).

In rendering the administrative decision, the ALJ concluded that Plaintiff last met the insured status requirements on December 31, 2017 and had not engaged in substantial gainful activity during the period of his alleged onset date of October 15, 2014 through his date last insured of December 31, 2017 (Tr. 28). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: HIV, hepatitis C, chronic obstructive pulmonary disease ("COPD"), and cervical and lumbar spine degenerative disc disease with stenosis (Tr. 29). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 30). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b), with these limitations:

> [N]o more than frequent climbing ramps and stairs, balancing on uneven surfaces; occasional stooping; frequent kneeling and crouching; occasional crawling, occasional climbing vertical ladders, but never climbing ropes, scaffolds or at open unprotected heights; as far as standing and or walking[,] would be about 6 hours total in an 8-hour workday, sitting about 6 hours total, and those are with the usual breaks; in addition, avoidance of extreme vibrations, extreme cold and heat temperatures, extreme humidity and wetness; as well as avoidance of extreme dust, smoke, fumes, or gases; and avoidance of work involving the risk of cutting and bleeding where others can be contaminated, such as in food preparation.

(Tr. 30). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 31).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work as a lubrication servicer but could work as a cashier, ticket seller, survey worker, or photocopying machine operator, all jobs the ALJ determined exist in significant numbers in the national economy (Tr. 35). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Plaintiff argues (1) the ALJ did not articulate good cause to discount treating physician John Meyer, M.D.'s opinions regarding Plaintiff's physical limitations; (2) the ALJ's RFC assessment does not adequately account for Plaintiff's spinal impairments; and (3) the ALJ did not properly consider Plaintiff's subjective complaints of pain (Doc.

5

21). For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

> A.  **Substantial evidence supports the ALJ's decision to give little weight to Dr. Meyer's opinion regarding Plaintiff's physical limitations**.

Plaintiff first argues that the ALJ did not articulate good cause to discount the opinion of his treating primary care physician at Sarasota Family Medical, Dr. Meyer, who opined Plaintiff can only work two hours a day (Doc. 21 at 13-17; Tr. 618). The Commissioner retorts that the ALJ followed applicable legal standards in assigning less weight to Dr. Meyer's opinion and more weight to the opinion of non-examining consultive physician Steven Arkin, M.D. (Doc. 21 at 20-29). After reviewing the record, the Court agrees with the Commissioner.

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Comm'r of Soc. Sec.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[2] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79

---

[2] Although this regulation was amended effective March 27, 2017, the new regulation only applies to applications filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because Plaintiff's applications were filed on January 11, 2017, this prior version of the regulation applies to the Plaintiff's claim.

(11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and why. *Id.* at 1179. The ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). But the ALJ is not required to explicitly address each of these enumerated factors. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). While an ALJ must usually give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor merits no such deference. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion is usually accorded greater weight than that of a non-examining doctor. *Huntley v. Comm'r of Soc. Sec.*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

The more a medical source offers evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Also, the more consistent the medical opinion is

7

with the entire record, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford*, 363 F.3d at 1159. Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Phillips v. Barnhart*, 357 F.3d 1232,1240-41 (11th Cir. 2016); *Crawford*, 363 F.3d at 1159-60. But, in the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832 (citing *Sryrock*, 764 F.2d at 835) (emphasis in original); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Here, Dr. Meyer, a primary care physician, treated Plaintiff approximately once a month from May 2015 through April 2019, for neck, hip, and back pain (Dr. Meyer was aware of Plaintiff's 2014 HIV and 2015 hepatitis C diagnoses but did not treat him for these impairments, other providers did) (Tr. 356-69, 422-41, 453-547, 598-645). Dr. Meyer prescribed opioids (either oxycodone, Lortab, or Norco) for Plaintiff's pain, administered injections in his back once every six months or so, and recommended a back brace (Tr. 460, 465, 471, 481, 627, 631, 634). Plaintiff complained of chronic back pain to Dr. Meyer, and he often exhibited pain on palpation of the lumbar spine yet he consistently "denied stiffness, swelling, muscle weakness and myalgias." (Tr. 480, 484, 488, 492). Dr. Meyer lists or circles Plaintiff's symptoms on pre-printed forms at each visit

and lists his diagnoses and plan, which generally consisted of prescribing and managing Plaintiff's medication.

In August 2019, Dr. Meyer completed a form titled "Medical statement regarding HIV and AIDS for Social Security disability claims" at Plaintiff's request (Tr. 617-19). Dr. Meyer reported that Plaintiff had chronic hand dermatitis related to his HIV infection and chronic neck and back pain (Tr. 617). He circled answers indicating Plaintiff can work only 2 hours per day, lift to 20 pounds on a frequent basis, and sit and stand for 30 minutes at a time each (Tr. 618). He also checked boxes opining that Plaintiff has no psychiatric limitations (*Id.*).

The ALJ assigned "great weight to Dr. Meyer's assessment of the psychiatric limitations (Ex. B12F). However, the undersigned gives little to no weight to Dr. Meyer's sit, stand, and work opinions (Ex. B12F)." (Tr. 33). According to the ALJ, "Dr. Meyer did not provide an explanation for these conclusions; neither are they supported by the overall record." (*Id.*). Plaintiff contends this is error because Dr. Meyer's treatment notes paint the picture of a patient with spinal impairments that were not improving over time.

In essence, Plaintiff argues that other medical evidence exists that *could* corroborate a disabling spinal impairment. First, Plaintiff points out the report authored by consultative physician Michael Breglia, M.D. after his November 2017 examination of Plaintiff (Tr. 549-54). In Plaintiff's words, "Dr. Breglia noted '[s]traight leg raise testing from a sitting position is positive at 20 degrees bilaterally,' an antalgic gait, and reduced lumbar spine range of motion." (Doc. 21 at 16). But the ALJ expressly referenced that Plaintiff's straight leg test was positive at 20 degrees bilaterally (Tr. 32). On the other

9

hand, the ALJ also noted Dr. Breglia's findings that Plaintiff had 5 out of 5 muscle strength in all categories, "no history of undergoing back surgery, loss of bowel/bladder control, or numbness in the groin/genitals[,]" and "no obvious paravertebral muscle spasm." (Tr. 551-52). Dr. Breglia stated:

> The patient is able to squat and stand back up without significant difficulty. The patient is able to walk a few steps on the toes. The patient is able to get on and off the examination table without assistance. The patient is able to stand on one foot without assistance bilaterally. The patient is able to hop on one foot without assistance bilaterally.

(Tr. 552). Indeed, Dr. Meyer himself opined that Plaintiff could lift 20 pounds frequently (Tr. 618).

Second, Plaintiff emphasizes that during his June 2017 trip to the ER for back pain, the attending doctor noted he had "[s]ignificant left sided paraspinal tenderness, [p]ositive bilateral straight leg raise." (Tr. 448) Yet, as the ALJ points out, an x-ray of Plaintiff's lumbar spine taken during that ER visit revealed "no acute radiographic findings." (Tr. 32, 449) The ALJ acknowledges Plaintiff's disc bulges, disc protrusion, and foraminal narrowing, as revealed in a February 2016 MRI (Tr. 32, 641-42). The ALJ accounted for these objective findings by limiting Plaintiff to never climbing ropes, scaffolds, or being exposed to open unprotected heights or extreme vibration (Tr. 32).

Lastly, Plaintiff contends the ALJ erred by assigning more weight to the RFC finding of non-examining state agency physician Dr. Arkin than to Dr. Meyer's opinion. In November 2017, Dr. Arkin reviewed Plaintiff's application at the reconsideration level and determined Plaintiff is capable of a reduced range of light work (Tr. 103-05). The ALJ afforded this opinion great weight as it "was not only consistent with and supported by

the record, but also because it was consistent with the undersigned's findings contained in this decision." (Tr. 33). But according to Plaintiff, "there is no indication in the rationale provided by Dr. Arkin that he considered the MRI evidence documenting Plaintiff's spinal impairments, even though that information was include in the preceding summary section of the State agency form[,]" and "Dr. Arkin did not address the ongoing treatment Plaintiff received from Dr. Meyer's clinic for back pain, even though this information was noted in the preceding summary section." (Doc. 21 at 19).

Dr. Arkin does not explicitly reference either Dr. Meyer's treatment or Plaintiff's February 2016 MRI in the short explanation, but it is obvious he considered this evidence because it is summarized on the same agency form. Regardless, even if Dr. Arkin did not consider Dr. Meyer's treatment (which was ongoing) or the February 2016 MRI, "[a]n ALJ may rely on an opinion of state medical consultants even when the consultant did not review all medical records." *Jefferson v. Comm'r of Soc. Sec.*, No. 3:17-CV-1162-J-PDB, 2019 WL 1417317, at *3 (M.D. Fla. Mar. 29, 2019) (citations omitted). Importantly, in discounting Dr. Meyer's treatment of Plaintiff, the ALJ did not rely solely on Dr. Arkin's findings. He also considered Plaintiff's February 2016 MRI, Dr. Breglia's consultative examination, as well as Plaintiff's other medical records, his reports of daily activities, and his work history (Tr. 31-33). *See Del Carmen Duarte v. Saul*, No. 20-20131-Civ-WILLIAMS/TORRES, 2020 WL 9048786, at *7 (S.D. Fla. Dec. 23, 2020) (stating that "the more difficult question is whether an ALJ's decision can be supported by substantial evidence when the *only* opinion assigned 'great weight' is a non-examining physician" and holding that it can be where the opinion is consistent with other medical evidence in the

11

record). The ALJ articulated good cause to discount Dr. Meyer's opinion regarding Plaintiff's physical limitations. Plaintiff's first argument fails.

### B. The RFC assessment adequately accounts for Plaintiff's spinal limitations.

Next, Plaintiff argues that the ALJ erred in determining his RFC because it does not adequately account for Plaintiff's spinal impairments. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ assesses what a claimant can do in a work setting despite any physical or mental limitations caused by his or her impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and must consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, the ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). In the end, a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his or her findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Comm'r of Soc. Sec. Admin.*,

482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor").

Here, the ALJ considered the evidence of Plaintiff's spinal impairments, including the February 2016 MRI (Tr. 363-65), which the ALJ summarizes as follows:

> As it relates to the claimant's cervical and lumbar spine, the record reveals the claimant was diagnosed with degenerative disc disease (Ex. B2F; B12F). Magnetic resonance imaging (MRI) of the claimant's cervical spine in February 2016 showed no gross intrinsic cervical cord signal abnormality; however, he was assessed to have a borderline congenitally small cervical spinal canal associated with multilevel disc degenerative disease and mild cervical spondylosis which contributed to central canal stenosis from C3 to C6 (Ex. B12F). The imaging also showed there was an extradural effect related to small disc bulges and disc/osteophyte degenerative foraminal stenosis and multilevel facet arthrosis (Ex. B12F). Likewise an MRI of the claimant's lumbar spine showed there was no cord signal abnormality, but there was disc degeneration predominating L3-L4, and multilevel facet arthrosis (Ex. B12F). Moreover, at multiple levels [ ] there was moderate bulging of the annulus with mild effacement of the ventral thecal sac, ventral epidural fat planes, and stenosis.

(Tr. 32). Plaintiff alleges this summary contains a "notable omission" of "the most significant finding in the lumbar spine MRI of nerve abutment at three different spinal levels." (Doc. 21 at 30). This omission is made more glaring – Plaintiff's argument goes – because the ALJ compares the February 2016 lumbar MRI to the lumbar spine x-ray taken in June 2017 in the ER that showed relatively normal findings (Tr. 32).

Plaintiff in essence is asking the Court to reweigh the evidence, which is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the

13

ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]") (alterations in original) (quotations and citations omitted); *Thomas v. Comm'r of Soc. Sec.*, No. 3:19-cv-943-J-PDB, 2020 WL 5810234, at *3 (M.D. Fla. Sept. 30, 2020) ("The mere existence of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings.") (quotations and citations omitted).

What Plaintiff characterizes as the MRI's "most significant" findings regarding nerve abutment are part of radiologist Jose Negron-Soto, M.D.'s summary of findings (Tr. 363-65). But Plaintiff does not mention Dr. Negron-Soto's conclusion that the MRI showed Plaintiff had mild degenerative disc disease and facet arthrosis and no high-grade foraminal or canal stenosis (Tr. 364). In the Eleventh Circuit, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also McMahon v. Comm'r of Soc. Sec.*, 583 F. App'x 886, 891-92 (11th Cir. 2014) (stating "while the ALJ must address medical opinions explicitly, the ALJ is not required to address every piece of evidence in the record."). Against this medical backdrop, substantial evidence supports the ALJ's decision that Plaintiff retains the RFC for light work. Plaintiff's second argument does not warrant remand.

### C. The ALJ properly considered Plaintiff's complaints of subjective pain.

Finally, Plaintiff argues that the ALJ's "decision contains internal inconsistencies in the assessment of subjective limitations and does not sufficiently explain why Plaintiff's

14

allegations were discredited." (Doc. 21 at 33). The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to his pain, he must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529, 416.929. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1513, 416.913. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's foregoing statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record, including the above findings in the "paragraph B" criteria under Finding 3, for the reasons explained in this decision.

(Tr. 31). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, it is. The ALJ summarized Plaintiff's complaints: "The claimant reported h[is] back feels like he has a knife in it, and after some time begins to radiate into his groin and legs after 5 hours of activity." (Tr. 31). Plaintiff "testified he experienced pain and stiffness in his back, which radiates into legs. He also testified he gets tired all the time and very easily." (*Id.*). The ALJ considered Plaintiff's allegations that "his impairments and corresponding pain affects his ability to bend, kneel, sit, walk, and stand." (*Id.*).

In finding that Plaintiff's pain allegations are not disabling, the ALJ considered the objective medical evidence, including (as discussed above) Dr. Meyer's conservative treatment of Plaintiff and Plaintiff's imaging, which showed mild findings. The ALJ also considered Plaintiff's daily activities (Tr. 33). Plaintiff testified he does not have a driver's license but either takes the bus to run errands or asks his wife or mom for a ride (Tr. 45), he "could lift 25 [pounds] max still, here and there" (Tr. 48), he walks his two dogs every day, he does his own laundry and grocery shopping, and he pitches in with household chores (Tr. 48-50).

At this point, the Court reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). With this standard in mind, after considering the entire record, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's allegations of subjective pain.

## V.     Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on March 23, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE